## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| MARCINA JOHNSON-TOOTHAKER, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 2:20-cv-00371-JDL ) |
| BAYVIEW LOAN SERVICING LLC, et al., | ) ) ) ) |
| Defendants. | ) |

### ORDER ON MOTION FOR SUMMARY JUDGMENT

This action concerns the validity of a mortgage that encumbers residential property in Freeport, Maine.  Plaintiff Megan Gray currently owns the property, which was previously owned by her parents, Robert V. Toothaker, Jr. and Angelina L. Toothaker, both of whom are deceased.  Plaintiff Marcina Johnson-Toothaker, also a daughter of Angelina and Robert Toothaker, is the Personal Representative of Angelina Toothaker's estate.  The two Plaintiffs are hereinafter referred to collectively as "Johnson-Toothaker."  The property is subject to a mortgage now held by the Defendant, Bayview Loan Servicing, LLC ("Bayview"), which was signed by both Angelina and Robert Toothaker.  Robert Toothaker was the sole signatory to a promissory note that was secured by the mortgage.  Bayview filed a Petition to Determine Heirs of Robert's estate in the Cumberland County Probate Court on November 4, 2019.  On August 5, 2020, the Probate Court dismissed the petition. Johnson-Toothaker filed a complaint (ECF No. 6-2) against Bayview in Maine

Superior Court (Cumberland County) on March 27, 2020, alleging that Bayview does not have a valid legal or equitable interest in the property because it failed to file a claim on the promissory note within the prescribed statutory time limit following Robert's death, which, Johnson-Toothaker contends, renders the mortgage invalid. On October 12, 2020, Bayview removed (ECF No. 1) the action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C.A. § 1332(a)(1) (West 2022).

Johnson-Toothaker moves for summary judgment (ECF No. 47) on Count I (Declaratory Judgment – Title to Real Estate) and Count II (Declaratory Judgment – Insurance Proceeds) of the complaint. Bayview cross-moves for summary judgment (ECF No. 55) on both Counts I and II, as well as Count III (Unjust Enrichment), Count IV (Conversion), and Count V (Fair Debt Collection Practices Act Violation). Defendant Federal National Mortgage Association ("FNMA") has joined (ECF No. 57) Bayview in its opposition to Johnson-Toothaker's motion for summary judgment and in Bayview's cross-motion for summary judgment. For the reasons detailed below, I deny Johnson-Toothaker's motion for partial summary judgment on Counts I and II and grant Bayview's cross-motion for summary judgment on Counts I, II, III, IV, and V.

## I. FACTUAL BACKGROUND

Because both parties have moved for summary judgment, I "view each motion separately and draw all reasonable inferences in favor of the respective non-moving party." *Kendrick v. Me. Med. Ctr.*, 547 F. Supp. 3d 87, 93 (D. Me. 2021). The following facts are drawn from the parties' separate statements of fact and documents

incorporated therein.   *See* ECF No. 47-1 (Johnson-Toothaker); ECF No. 52 (Bayview).[1]

## A.   Mortgage and Promissory Note

Robert and Angelina Toothaker owned, as joint tenants, property located at 62 Fernald Road in Freeport, Maine, by virtue of three deeds, recorded in the Cumberland County Registry of Deeds in 1966, 1972, and 1982.   Robert Toothaker executed a promissory note in favor of NE Moves Mortgage, LLC, in the principal amount of $124,000 on March 20, 2009.   Angelina Toothaker was not a signatory to the promissory note.   The note was secured by a mortgage on the property granted by Robert and Angelina Toothaker to NE Moves Mortgage, LLC, also dated March 20, 2009.   The terms of the mortgage confirmed that Angelina was a signatory "only to give [her] rights in the Property to Lender," and that she was "not personally obligated to pay the 'Sums Secured,' defined in the mortgage as the unpaid balance of the loan and any amounts, with interest, spent by the Lender pursuant to the terms of the mortgage to protect the value of the property."   ECF No. 47-4 at 13.

The mortgage required the borrowers to maintain hazard or property insurance to cover property damage, including damage caused by fire.   Under the mortgage terms, money paid by the insurance company under the property insurance

---

[1]   The parties dispute the facts pertaining to whether the payments Angelina Toothaker made to Chase were authorized.   Johnson-Toothaker contends that these payments were not authorized because, she asserts, Chase improperly coerced Angelina Toothaker into making them.   Johnson-Toothaker exclusively cites to an attorney affidavit to support these statements.   Bayview denies these facts and requests that they be stricken because the attorney affidavit is inadmissible hearsay and thus inadmissible for consideration on a motion for summary judgment.   I strike these facts, contained in paragraphs 15 through 17 of Johnson-Toothaker's Statement of Material Facts, as well as the attorney affidavit submitted to support these facts, because the attorney affidavit is inadmissible hearsay.   *See Davila v. Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 17 (1st Cir. 2007) ("It is black-letter law that hearsay evidence cannot be considered on summary judgment.").

agreement (the "Proceeds" referenced in the mortgage), "will be used to repair or to restore the damaged Property" unless one of three exceptions applies.   These exceptions are: "(a) it is not economically feasible to make the repairs or restoration; (b) the use of the Proceeds for that purpose would lessen the protection given to Lender by [the mortgage]; or (c) the Lender [and borrowers] have agreed in writing not to use the Proceeds for that purpose."  ECF No. 47-4 at 9.  If either of the first two exceptions applies, the mortgage permits the lender to use the insurance proceeds "to pay the Sums Secured" by the note.  ECF No. 47-4 at 9.  The mortgage also allows the lender to hold the proceeds "[d]uring the repair and restoration period" and release the proceeds upon timely inspection and verification that the work was performed satisfactorily.  ECF No. 47-4 at 9.

### 1.  Assignments of the Mortgage

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for NE Moves Mortgage, LLC, purported to assign the mortgage to Chase Bank, N.A. ("Chase") on March 21, 2017.  Chase next purported to assign the mortgage back to MERS on August 16, 2018.  MERS then purported to assign the mortgage to Federal National Mortgage Association ("FNMA") on October 1, 2019.  Finally, PHH Home Loans, LLC (successor by merger to NE Moves Mortgage, LLC), purported to assign the mortgage to Bayview by virtue of a quitclaim assignment.

### 2.  Robert Toothaker's Estate - Continued Payments on the Note

Robert Toothaker died on January 16, 2012, and Angelina Toothaker automatically took full ownership of the property as a joint tenant.  Angelina Toothaker was subsequently appointed Personal Representative of Robert

Toothaker's estate by the Cumberland County Probate Court. Creditors were provided notice of the filing of an informal probate for the Estate of Robert Toothaker, and no claims related to the note or to the mortgage were presented. The Estate of Robert Toothaker was closed in August 2014.

After Robert Toothaker's death, Angelina Toothaker or a family member authorized on her behalf called Chase each month to make payments on the mortgage. The final payment that Angelina Toothaker made on the mortgage was to Chase on April 19, 2018. No payments have been made towards the mortgage since that date.

### 3. Fire in April 2018

The hay barn located on the property was substantially damaged by a fire in April 2018. MMG Insurance issued a check for payment on the loss in the amount of $20,469.86 payable jointly to Chase and Angelina Toothaker. Through counsel, Angelina Toothaker asked Chase to arrange for the check to be released solely to her. Bayview, as the successor-in-interest to Chase, contends that although it holds an equitable interest in the insurance proceeds, it has never received the check or any other proceeds from the insurance policy. The fire damage has not been repaired.

### 4. Angelina's Death

Angelina Toothaker died on December 13, 2018. Upon her death, Marcina Johnson-Toothaker was appointed as Personal Representative of Angelina Toothaker's estate. Creditors were provided with notice of the filing of Angelina Toothaker's estate, and no claims that related to either the note or the mortgage were filed. The property was conveyed to Megan Gray by Deed of Distribution dated

November 22, 2019.  The mortgage has not been discharged.  Bayview has not initiated a foreclosure action on the mortgage and has not otherwise attempted to enforce the note.

### 5.  Previous Legal Proceedings

On November 4, 2019, Bayview filed a petition in the Cumberland County Probate Court to determine Robert Toothaker's heirs, for the purpose of ascertaining all necessary parties to a future foreclosure proceeding.  The petition was dismissed on August 5, 2020, upon a finding that Bayview did not have standing to pursue the matter because it lacked a recorded assignment or other interest in the mortgage. While the probate matter was pending, PPH Home Loans, LLC, successor by merger to NE Moves Mortgage, LLC, assigned the mortgage to Bayview through a quitclaim assignment, dated June 11, 2020, which was recorded in the Cumberland County Registry of Deeds.

Bayview subsequently moved for reconsideration of the Probate Court's decision.  However, the court declined to reopen the estate because it found that Bayview failed to file a timely claim against the Estate of Robert V. Toothaker, Jr. and was consequently barred from doing so and, therefore, lacked standing to seek reopening of the estate.  Specifically, the Probate Court held that although Bayview may have had a claim against Robert's estate based on his obligations under the note, that claim was time-barred under 18-A M.R.S.A. § 3-803 (West 2019).  *See also* 18-C M.R.S.A. § 3-803 (West 2022) (location of same probate code provision following statutory reorganization).  The Probate Court's decision explained that the exception to the time limitation for claims against an estate for proceedings to enforce a

6

mortgage or other lien against property of an estate was not relevant because Angelina Toothaker was a joint tenant with the right of survivorship and thus the property did not pass through Robert Toothaker's estate.  The Probate Court determined that Bayview lacked standing to determine Robert Toothaker's heirs for the purposes of foreclosing on the mortgage, and that any claim that Bayview had against the estate, based on the obligations of the promissory note, was time barred.

## II.  LEGAL ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 92-93 (1st Cir. 2021).  "An issue is 'genuine' if it can 'be resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'"  *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (quoting *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016)).  To prevail, the moving party must "affirmatively produce evidence that negates an essential element of the non-moving party's claim," or, "using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'"  *Ocasio-Hernandez v. Fortuño-Burset*, 777 F.3d 1, 4-5 (1st Cir. 2015) (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)).  A court views the evidence in the light most favorable to the non-moving party when determining whether summary judgment should be granted.  *Taite*, 999 F.3d at 92.

"Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se." *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996). "Cross motions simply require [a court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, [the court] resolve[s] all factual disputes and any competing, rational inferences in the light most favorable to the [non-moving] party." *Id.* (citation omitted).

### B.    Analysis

#### 1.  Validity of the Mortgage

Johnson-Toothaker moves for summary judgment to obtain a declaratory judgment that the real estate title is unencumbered by the mortgage because Bayview failed to file a creditor's claim against the Estate of Robert Toothaker within the required statutory time period. Bayview cross-moves for summary judgment on this claim arguing that because Angelina was the owner of property encumbered by the mortgage, she passed both the property and the mortgage on to Megan Gray at her death and the mortgage remains valid. For the following reasons, I conclude that the mortgage remains enforceable.

A declaratory judgment action is a valid means of quieting title to the property in question. *Pushard v. Bank of Am., N.A.*, 2017 ME 230, ¶ 36, 175 A.3d 103. A court may quiet title to property if it determines that a mortgage is legally unenforceable. *See id.* (holding that "[b]ecause the [mortgagee] is precluded from seeking to recover on the note or enforce the mortgage, the [mortgagors] are entitled, as a matter of law" to declaratory relief quieting title). Maine is a title theory state, meaning that "a

8

mortgage is a conditional conveyance vesting legal title to the property in the mortgagee, with the mortgagor retaining the equitable right of redemption and the right to possession." *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 8, 2 A.3d 289 (citing *Johnson v. McNeil*, 2002 ME 99, ¶ 10, 800 A.2d 702).  The Law Court has held that, even if a note secured by a mortgage becomes unenforceable, the mortgage may still be foreclosed:  "[T]he running of the period of limitations during which the provisions of the note may be enforced does not eliminate the existence of the debt obligation itself, nor does it abrogate the mortgage securing the debt or affect the foreclosure remedies available to the mortgagee." *Johnson*, 2002 ME 99, ¶ 13, 800 A.2d 702.  In *Johnson*, the Law Court concluded that a mortgagee was not precluded from foreclosing on the mortgage despite being barred from pursuing a separate action on the note evidencing the debt, because the debt itself still remained and thus the mortgage was not extinguished. *Id*. ¶¶ 1, 13.

Johnson-Toothaker contends that the circumstances at hand are more closely analogous to *MTGLQ Investors, L.P. v. Alley*, 2017 ME 145, 166 A.3d 1002, than to *Johnson*, and draws upon *Alley* for support.  In *Alley*, a married couple jointly owned property and both signed the mortgage but only one signed the note. *Id*. ¶ 1.  The couple deeded the property to a third party (without required consent of the lender), the spouse who had signed the note died, and approximately one month later the note went into default. *Id*. ¶ 4.  The mortgagee named the surviving spouse as defendant and the third party as a party in interest, and a judgment of foreclosure issued. *Id*. ¶¶ 1, 2, 4.  The Law Court determined that the deceased spouse was the sole debtor on the note and that, because the mortgagee asserted breach of the mortgage based

on default of the note's payment obligations, she was a necessary party to the foreclosure action and needed to be joined.[2]  *Id.*  ¶¶ 4, 6-7.

   *Alley* does not govern the result in this case, as it stands for the narrow proposition that a necessary party to a foreclosure action must be joined, but does not provide a comprehensive range of people or entities who are necessary parties to a foreclosure action.  *Alley* also does not address the question of whether the debtor to a note would be a necessary party to an in rem foreclosure action.  Additionally, under *Johnson*, the mortgage may still be enforced through available foreclosure remedies, such as an in rem foreclosure action, even if the note is unenforceable, because Maine is a title theory state.  The Supreme Court has also explained that when the holder of a note's personal obligations to repay the debt have been extinguished through bankruptcy, that "[e]ven after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property."  *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).

   Johnson-Toothaker also argues that *Federal National Mortgage Association v. Deschaine*, 2017 ME 190, 170 A.3d 230 and *Pushard*, 2017 ME 230, 175 A.3d 103, should be read as requiring that the mortgage be treated as void as a matter of law. In both cases, the Law Court held that a mortgagor is claim precluded from filing a second foreclosure action on a mortgage in which the note's acceleration clause was activated and in which the first foreclosure action was dismissed with prejudice.

---

[2] The Law Court addressed this question, which had not been raised by the trial court or either party, on its own accord.  *Alley*,  2017 ME 145, ¶ 3, 166 A.3d 1002.

*Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230; *Pushard*, 2017 ME 230, ¶¶ 34-36, 175 A.3d 103.   However, *Deschaine* and *Pushard* are distinguishable because both are claim preclusion cases in which a foreclosure action had already been prosecuted and in which each bank "failed to prove its claim to the unitary obligation that it placed in issue in the foreclosure action" such that "it no longer ha[d] any enforceable interest in the note *or in the property set up as security for the note*."  *Pushard*, 2017 ME 230, ¶ 35 A.3d 103 (emphasis added).   Because Bayview has not initiated a foreclosure action, the Law Court's jurisprudence addressing the preclusive effect of a prior foreclosure action does not control the issue presented here.   Additionally, because Maine is a title theory state and the mortgage in this case remains enforceable, Bayview continues to have an enforceable interest in the property itself.

The First Circuit's decision in *Summers v. Financial Freedom Acquisition LLC*, 807 F.3d 351 (1st Cir. 2015), though not determinative because it applies Rhode Island law, is instructive.   In *Summers*, two individuals held title to a residential property as joint tenants.  807 F.3d at 353.  Following the death of one of the property owners, the surviving owner entered into a reverse mortgage in which the debt would become payable in full upon her death.   *Id*.  She died intestate, and the lender failed to file a claim in the probate proceedings even though notice of the probate proceedings was provided to creditors.   *Id*. at 354.  The estate was closed and her interest in the property was granted to her son and daughter, plaintiffs in the action. *Id*.  Foreclosure proceedings commenced a year later, and the son and daughter brought suit to contest the validity of the mortgage assignments and the foreclosure action.   *Id*.  The district court granted summary judgment to the mortgagee and the

First Circuit affirmed. *Id*. at 354, 358. Like Maine, Rhode Island is a title theory state, and in part on this basis the First Circuit reasoned that the Rhode Island Supreme Court would likely "hold that the right to foreclose should be treated as separate and distinct from the right to collect the underlying debt." *Id*. at 358. As a result, the First Circuit noted, "the failure to file a claim in probate proceedings may extinguish personal liability on the note secured by the real estate mortgage [but] that failure does not extinguish the mortgage itself. Consequently, such a failure does not interfere with the mortgagee's right to foreclose." *Id*. The First Circuit concluded that, at least in the context of a foreclosure action on a reverse mortgage, "[t]he probate process does not extinguish a real estate mortgage but, rather, only extinguishes personal liability for the underlying debt." *Id*.

In this case, the Cumberland County Probate Court's determination that the mortgaged property at issue never passed through Robert's estate, and that the note creditor could not reopen the estate due to the running of the statute of limitations, did not extinguish Bayview's right to enforce the mortgage because Maine is a title theory state. Although the promissory note is unenforceable, under *Johnson* the mortgage itself remains enforceable and the Plaintiffs are not entitled to declaratory judgment to the contrary.

### 2. Insurance Proceeds

Both parties point to the language of the mortgage to argue that they are entitled to the insurance proceeds. The mortgage dictates the handling of insurance proceeds in relatively straightforward manner:

> The amount paid by any insurance company with regard to the Property is called "Proceeds." The Proceeds will be used to repair or to restore the damaged Property whether or not the underlying insurance was required by Lender unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Proceeds for that purpose would lessen the protection given to Lender by this [mortgage]; or (c) Lender and [borrower] have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this [mortgage], then the Proceeds will be used to pay the Sums Secured. If any of the Proceeds remain after the amount that [mortgagor] owe[s] to Lender has been paid in full, the remaining Proceeds will be paid to [mortgagor]. . . .
>
> During the repair and restoration period, Lender will have the right to hold insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction. Lender will arrange the inspection promptly. Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

ECF 47-4 at 9. Although Johnson-Toothaker is correct that the insurance proceeds are to be used to repair the fire damage, under the plain language of the mortgage, Angelina Toothaker's estate is not entitled to receive the proceeds before the repairs are made and the lender has inspected the work.

In its cross-motion for summary judgment, Bayview contends that because the fire damage has not been repaired, the proceeds must be used to pay the sums secured because the value of the property is reduced by the lack of repairs. This argument goes too far, as the mortgage language is clear that this provision applies only if the repair is not economically feasible or if the repair would lessen the Lender's protection under the mortgage, neither of which has been argued.[3]   Because the mortgage

---

[3]  Bayview contends that the property without the hay barn lessens its protection by at least the amount of the proceeds. This argument misreads the applicable provision of the mortgage, which does not contemplate whether a failure to make the repair or restoration would lessen the lender's protection but instead speaks to a situation in which the repair or restoration itself lessens the lender's protection.

remains valid, its terms govern the distribution of the insurance proceeds. Bayview may hold the proceeds during the restoration period, and once the repairs are complete Bayview must disburse the proceeds following a prompt and satisfactory inspection.

### 3. Unjust Enrichment

To make out a claim of unjust enrichment in Maine, the moving party must show that: "(1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Knope v. Green Tree Servicing*, *LLC*, 2017 ME 95, ¶ 12, 161 A.3d 696 (quoting *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707). Unjust enrichment permits recovery for the "value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 14, 760 A.2d 1041.

Bayview contends that it is entitled to summary judgment on Johnson-Toothaker's unjust enrichment claim because the mortgage created a contractual relationship between Angelina Toothaker and Chase, which precludes assertion of an unjust enrichment claim. Johnson-Toothaker argues that no contractual relationship existed because Angelina was not a signatory to the note and that Bayview's predecessor, Chase, was thus not entitled to the mortgage payments Angelina made to them by phone. Johnson-Toothaker's argument largely rests on the proposition

that the mortgage is unenforceable because Angelina was not a signatory to the note and was not obligated to repay the note under the terms of the mortgage.

As explained above, the mortgage is valid and enforceable. Angelina was a signatory to the mortgage, and although she was not personally liable for the obligations of the note, there was nothing to preclude her from making regular payments on the mortgage to keep the loan in good standing. Because Maine is a title theory state, Chase could have foreclosed upon the mortgage had Angelina Toothaker ceased making payments. By making the payments, Angelina Toothaker prevented foreclosure and ensured that she could remain in the home. Chase, and Bayview as its successor, was not unjustly enriched. Bayview is entitled to summary judgment on this claim.

### 4. Conversion

To establish a claim of conversion, the plaintiff must show that an invasion of the plaintiff's possession by demonstrating: "(1) a property interest in the goods; (2) the right to their possession at the time of the alleged conversion; and (3) when the holder has acquired possession rightfully, a demand by the person entitled to possession and a refusal by the holder to surrender." *Mitchell v. Allstate Ins.*, 2011 ME 133, ¶ 15, 36 A.3d 876 (quoting *Bradford v. Dumond*, 675 A.2d 957, 962 (Me. 1996)). Furthermore, "'[t]he converter need not intend any conscious wrongdoing,' but need only act with 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Id.* (quoting *Ocean Nat. Bank of Kennebunk v. Diment*, 462 A.2d 35, 39 (Me. 1983)).

Johnson-Toothaker contends that Chase, Bayview's predecessor,[4] converted Angelina Toothaker's personal funds through its acceptance of mortgage payments from 2012 to 2018 and that Chase was not entitled to receipt of these payments because Angelina was not personally obligated to pay the debt on the note that was secured by the mortgage.  Because the mortgage is valid and enforceable, there was no conversion that occurred when Chase accepted payments from Angelina Toothaker.  Bayview is entitled to summary judgment on this claim.

### 5.  Fair Debt Collection Practices Act Violation

The Maine Fair Debt Collection Practices Act ("FDCPA") provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 32 M.R.S.A. § 11013(3) (West 2022).  It is an unfair or unconscionable act for a debt collector to undertake "[t]he collection of any amount . . . unless the amount is expressly authorized by the agreement creating the debt or permitted by law."  *Id.* § 11013(3)(A).  A debt collector is defined as "any person conducting business in this State, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  32 M.R.S.A. § 1102(6) (West 2022).  Creditors are "generally exempt from the definition of 'debt collector' and are thereby exempt from FDCPA liability."  *Bank of Am., N.A. v. Camire*, 2017 ME 20, ¶ 13, 155 A.3d 416; *see also Cota v. U.S. Bank Nat'l Assoc.*, Docket. no. 2:15-cv-486,

---

[4]  The parties dispute whether Bayview may be held liable for violations allegedly committed by Chase. Johnson-Toothaker contends, without support, that Bayview may be liable for Chase's actions with respect to the mortgage because Bayview was assigned the mortgage, while Bayview argues that it cannot be liable for the conduct of a non-party.  I do not reach this dispute, because I determine that even if Bayview is liable for its predecessor's conduct, there is no genuine dispute of material fact regarding Johnson-Toothaker's tort claims.

16

2016 WL 922784, at * 4 (D. Me. Mar. 10, 2016) (determining that a mortgage loan servicer that serviced a mortgage prior to default was not a "debt collector" under the FDCPA).

Johnson-Toothaker asserts that Bayview's predecessor, Chase, violated the FDCPA by collecting mortgage payments from Angelina Toothaker despite knowing that she was not a signatory to the note. Johnson-Toothaker acknowledges that Angelina Toothaker continued to pay the mortgage through April 2018 and does not plead any facts to suggest that Chase began servicing the mortgage after it fell into default. Thus, Chase was not a debt collector under the FDCPA.

Bayview asserts that the loan was not in default when it was boarded by Bayview in July 2018 because the first late charge was not assessed until August 8, 2018. The loan was past due when Bayview became the servicer of the mortgage, but Johnson-Toothaker has not set forth any facts or made any argument that Bayview has attempted to collect on the debt. Even if the loan was in default when the loan was boarded by Bayview by virtue of the fact that no payments were made after April 2018, it is undisputed that Bayview did not take any action to collect on the loan. Thus, Johnson-Toothaker may not bring a claim against Bayview under the FDCPA because Bayview has not "collect[ed] or attempted to collect a debt." 32 M.R.S.A. § 11013(3).

This claim, like the others, rests on Johnson-Toothaker's contention that the mortgage was unenforceable and that, because Angelina Toothaker was not obligated to pay the amount due on the note, Chase was also not entitled to receive those payments. For the reasons previously explained, although Angelina Toothaker was

17

not personally liable for the note, she had the ability to make payments to prevent foreclosure on the property.  Thus, it was not unlawful for Chase to receive these payments.  Additionally, Chase did not become a servicer of the mortgage after it fell into default and Bayview has not attempted to collect on the mortgage loan, so there is no genuine dispute of fact that either are subject to the FDCPA.  Thus, Bayview is entitled to summary judgment on this claim.

## III.  CONCLUSION

For the foregoing reasons, Johnson-Toothaker is not entitled to a judgment declaring the mortgage void as a matter of law or a judgment that Bayview does not have an interest in the MMG insurance proceeds.  The MMG insurance proceeds must be disbursed as provided by the terms of the mortgage:  Johnson-Toothaker is not entitled to the MMG insurance proceeds in advance of making the necessary repairs, and Bayview is not entitled to apply the insurance proceeds to the "sums secured" by the mortgage.

Accordingly, it is **ORDERED** that Marcina Johnson-Toothaker's Motion for Partial Summary Judgment (ECF No. 47) is **DENIED**.  Bayview's Cross-Motion for Summary Judgment (ECF No. 55) is **GRANTED**.  The Court will convene a case management conference with counsel to discuss the terms of a Declaratory Judgment to be issued in keeping with this decision.

**SO ORDERED.**

**Dated: August 11, 2022.**

_____/s/ **JON D. LEVY**_____
**CHIEF U.S. DISTRICT JUDGE**

18